UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF PENNSYLVANIA

IN RE:      SUZANNE LAYNAS           :    Chapter 7
                                      :
            Debtor(s)                 :    Bky. No. 06-10297ELF
                                      :

# MEMORANDUM OPINION

BY:  ERIC L. FRANK,  U.S.  BANKRUPTCY JUDGE

## I. INTRODUCTION

In this case, I am called upon to interpret and apply 11 U.S.C. §524(m). Section 524(m) is one of the new provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. No. 109-8, 119 Stat. 23 (2005) ("BAPCPA"). For the reasons set forth below, I will exercise my authority under 11 U.S.C. §524(m) (1) to disapprove a chapter 7 debtor's reaffirmation agreement.

## II. FACTUAL AND PROCEDURAL BACKGROUND

This chapter 7 case was filed by Suzanne A. Laynas on January 26, 2006.[1] In her bankruptcy schedules, the Debtor disclosed net monthly income of $2,324 (Schedule I) and monthly expenses of $3,075 (Schedule J).

The docket further reflects that the §341 meeting of creditors was held, but not concluded

---

[1] The court may take judicial notice of the docket and the content of the bankruptcy schedules and other documents filed in the case for the purpose of ascertaining the timing and status of events in the case and facts not reasonably in dispute. See Fed. R. Evid. 201; In re Scholl, 1998 WL 546607, at *1 n. 1 (Bankr. E.D. Pa. Aug. 26, 1998). See also In re Indian Palm Associates, 61 F.3d 197, 205 (3d Cir. 1995).

-1-

on March 3, 2006. On March 7, 2006, the chapter 7 trustee filed a notice stating that this is an asset case and requesting that a deadline be set for the filing of proofs of claim.

On April 24, 2006, DaimlerChrysler Financial Services Americas LLC ("DaimlerChrysler") filed a motion for relief from the automatic stay, seeking permission to exercise its rights under state law to take possession and dispose of the Debtor's automobile, a 2000 Saturn LS ("the §362 Motion"). One week later, on May 1, 2006, counsel for DaimlerChrysler filed with the court a reaffirmation agreement between the Debtor and DaimlerChrysler ("the Reaffirmation Agreement"). The §362 Motion was withdrawn by DaimlerChrysler on the same day.

The Reaffirmation Agreement consists of several "Parts." See 11 U.S.C. §524(k)(3)-(8) (setting forth components of reaffirmation package).

Part A of the Reaffirmation Agreement provides for a reaffirmation amount of $3,942.60, paid at an annual percentage rate of 8.79% in 21 monthly instalments of $190.99.

Part B of the Reaffirmation Agreement includes the Debtor's promise to pay the reaffirmed debt, the Debtor's signature and the signature of DaimlerChrysler's counsel indicating that the agreement has been accepted by DaimlerChrysler.[2]

Part C of the Reaffirmation Agreement is a certification by the Debtor's counsel that: the Debtor's agreement was fully informed and voluntary; the agreement does not impose an undue hardship on the Debtor or the Debtor's dependents; and counsel advised the Debtor of the legal effect and consequences of reaffirmation. See 11 U.S.C. §524(c)(3).

Part D of the Reaffirmation Agreement contains the Debtor's Statement in Support of

---

[2] I have no reason to question the authenticity of the signatures.

Reaffirmation Agreement. It states, in pertinent part:

> I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $2,800.00, and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $2,600, leaving $200 to make the required payments on this reaffirmed debt.

At the time the Reaffirmation Agreement was filed, it was not accompanied by a Statement in accordance with Interim Fed. R. Bankr. P. 4008. The consequence of the failure to file a statement with Statement required by Interim Rule 4008 will be discussed below.

On May 4, 2006, I entered an order determining that there was a presumption of undue hardship under 11 U.S.C. §524(m)(1) and scheduled a hearing to be held on May 31, 2006 to determine whether the Reaffirmation Agreement should be disapproved. On May 31, 2006, no one appeared at the hearing.[3]

In this Memorandum Opinion, I will explain why I concluded that the Reaffirmation Agreement created a presumption of undue hardship, causing me to schedule the May 31, 2006 hearing. I will then explain why I will not approve the Reaffirmation Agreement.

---

[3] On May 26, 2006, DaimlerChrysler did submit a letter to the court in support of the Reaffirmation Agreement. The letter made a factual representation about the Saturn's value relative to the unpaid balance of the debt. After receipt, the letter was docketed. I have not considered its content in my decision. Parties may not submit evidence to the court by way of letter.

## III. DISCUSSION

### A. Statutory Framework for the Enforceability and Court Approval of Reaffirmation Agreements

#### 1. 11 U.S.C. §524 Prior to the Enactment of BAPCPA

The enforceability of a reaffirmation agreement is governed by 11 U.S.C. §524(c). Prior to the effective date of BAPCPA, §524(c) provided:

> (1) such agreement was made before the granting of the discharge under section 727, 1141, 1228, or 1328 of this title;
>
> (2)   (A) such agreement contains a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim; and
>> (B) such agreement contains a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under nonbankruptcy law, or under any agreement not in accordance with the provisions of this subsection;
>
> (3) such agreement has been filed with the court and, if applicable, accompanied by a declaration or an affidavit of the attorney that represented the debtor during the course of negotiating an agreement under this subsection, which states that
>> (A) such agreement represents a fully informed and voluntary agreement by the debtor;
>>
>> (B) such agreement does not impose an undue hardship on the debtor or a dependent of the debtor; and
>>
>> (C) the attorney fully advised the debtor of the legal effect and consequences of--
>>> (i) an agreement of the kind specified in this subsection; and
>>>
>>> (ii) any default under such an agreement;
>
> (4) the debtor has not rescinded such agreement at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission to the holder of such claim;
>
> (5) the provisions of subsection (d) of this section have been complied with; and
>
> (6)   (A) in a case concerning an individual who was not represented by an attorney during the course of negotiating an agreement under this subsection, the court approves such agreement as--

>     **(i)** not imposing an undue hardship on the debtor or a dependent of
>     the debtor; and
>
>     **(ii)** in the best interest of the debtor.
>
> **(B)** Subparagraph (A) shall not apply to the extent that such debt is a
> consumer debt secured by real property.

Before the effective date of BAPCPA, §524(c) served as a "checklist, outlining the process parties must follow in order to have an enforceable reaffirmation agreement." David B. Wheeler & Douglas E. Wedge, A Fully Informed Decision: Reaffirmation, Disclosure and the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, 79 Am. Bankr. L.J. 789, 790 (2005) ("Wheeler & Wedge").

Briefly put, for a reaffirmation to be enforceable prior to the enactment of BAPCPA, the requirements were: (1) timely entering into the agreement; (2) filing the agreement with the court; (3) including in the agreement a conspicuous statement of the debtor's right not to reaffirm and of the debtor's right to rescind; (4) if an attorney represented the debtor in the course of the negotiation of the reaffirmation agreement, filing a declaration or affidavit by the debtor's counsel with specified representations that certain disclosures and counseling were provided to the debtor; and (5) if an attorney did not represent the debtor in the course of the negotiation of the reaffirmation agreement, court approval of the agreement, provided that the court found that the agreement would not impose an undue hardship on the debtor and was in the best interest of the debtor.[4] See In re Close, 2003 WL 22697825, at *8 n.13 (Bankr. E.D. Pa. October 29,

---

[4] Section 524(d) required, and continues to require, that if an attorney did not represent the debtor in the negotiation of the reaffirmation agreement, the court shall hold a hearing to determine if the proposed reaffirmation would impose an undue hardship or is in the best interest of the debtor. 11 U.S.C. §524(d). Conversely, if an attorney represented the debtor in the reaffirmation process and if the attorney signs the affidavit or declaration as provided in §524(c)(3), no court approval process is mandated. I note, however, that a line of cases exists

2003).

## 2. 11 U.S.C. §524 After the Enactment of BAPCPA

Section 524(c)(2) was amended by BAPCPA. The requirement for the enforceability of a reaffirmation agreement set forth in the prior version of §524(c)(2) – that the reaffirmation agreement disclose clearly and conspicuously that the debtor may rescind the reaffirmation and has no legal obligation to enter into the reaffirmation – was deleted and replaced with new and substantial requirements as set forth in §524(k).

Section 524(k) is a new subsection of §524. It includes 6 subsections which set out mandatory components of a "reaffirmation package," which must be filed with the court in order for a reaffirmation agreement to be enforceable under §523(c), and 2 subsections which contain permissive forms for use as part of a reaffirmation package. Thus, after the enactment of BAPCPA, the Code "no longer envisions a reaffirmation agreement standing alone, supplemented only by the certification of counsel that the debtor understands the agreement and that it imposes no undue hardship." Wheeler & Wedge, 79 Am. Bankr. L.J. at 800. The existing reaffirmation process has been supplemented with new disclosure requirements and, as discussed below, an additional layer of judicial review.

---

under §524(c) holding that the court retains the authority to disapprove a reaffirmation agreement, notwithstanding the filing of an attorney declaration under §524(c)(3). See In re Vargas, 257 B.R. 157, 166 n.11 (Bankr. D.N.J. 2001) & authorities cited therein. Also, the absence of the requirement that the court approve the agreement does not, by itself, mean that the agreement is enforceable. Strict compliance with the requirements of §524 is mandatory and a reaffirmation agreement that fails to comply fully with 11 U.S.C. §524 is void and unenforceable. In re Hovestadt, 193 B.R. 382 (Bankr. D. Mass 1996); accord, In re Getzoff, 180 B.R. 572 (B.A.P. 9th Cir. 1995); In re Walker, 180 B.R. 834, 846 & n.21 (Bankr. W.D. La. 1995) (collecting cases).

Section 524(k)(3) provides for a disclosure statement to be provided to the debtor. The disclosure statement is labeled "Part A" of the reaffirmation package. Part A is the lengthiest component of the reaffirmation package. The statute sets out, in great detail, the content which must be included in the "disclosure statement." See 11 U.S.C. §524(k)(3) (stating that the required disclosure statement "**shall** consist of the following") (emphasis added).

The other components of the reaffirmation package are:

- Part B: the actual reaffirmation agreement between the debtor and the creditor;

- Part C: a declaration of the debtor's counsel;

- Part D: a statement in support of the agreement signed by the debtor; and

- Part E: a motion, to be filed (if court approval is necessary) and form of order which may be used to approve a reaffirmation agreement (if approval is necessary).

11 U.S.C. §524(k)(4)-(8).

The §524(k) reaffirmation package dovetails with another new BAPCPA provision, 11 U.S.C. §524(m). Specifically, the statement of the debtor required by §524(k)(6)(A) (i.e., Part D of the reaffirmation package) connects directly to §524(m)(1).

Section 524 (k)(6)(A) requires that the debtor state, inter alia:

> I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $___, and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $___, leaving $___ to make the required payments on this reaffirmed debt.

11 U.S.C. § 524 (k)(6)(A).

Another new subsection of §524, §524(m), then provides that a presumption of undue hardship arises if the difference between the debtor's monthly income and the debtor's monthly expenses as set forth in the §524(k)(6)(A) Statement is less than the monthly payment required under the reaffirmation agreement.[5] When a presumption of undue hardship arises, judicial review is mandated.[6]

Section 524(m) also provides that the undue hardship presumption may be rebutted in writing in the debtor's statement in Part D of the reaffirmation package. If the presumption is not rebutted to the court's satisfaction, the court may disapprove the reaffirmation agreement, but may not do so without notice and hearing to the debtor and the creditor.[7]

This duty of the court to review reaffirmation agreements for undue hardship, if an objective presumption of undue hardship arises, is one of the significant changes in the BAPCPA

---

[5] Section 524(m)(1) states:

> it shall be presumed that such agreement is an undue hardship on the debtor if the debtor's monthly income less the debtor's monthly expenses as shown on the debtor's completed and signed statement in support of such agreement required under subsection (k)(6)(A) is less than the scheduled payments on the reaffirmed debt.

[6] The statute states succinctly: "The presumption **shall** be reviewed by the court." 11 U.S.C. §524(m)(1) (emphasis added).

[7] Section 524(m)(1) has two other procedural limitations on judicial review of a reaffirmation agreement. The presumption of undue hardship, if it arises, continues for only 60 days (subject to extension for cause before the expiration of the 60 day period). Also, a hearing on undue hardship must be concluded before the discharge order is entered. In this case, the reaffirmation agreement was filed on May 1, 2006. Thus, my order of June 16, 2006, disapproving the reaffirmation agreement, was entered while the presumption remained in effect. Also, the hearing on undue hardship was held before the entry of discharge in this case.

overhaul of the reaffirmation process. Prior to BAPCPA, courts were not required to review reaffirmation agreements filed by debtors who were represented by counsel, provided counsel signed and filed the requisite statement required by 11 U.S.C. §524(c)(3). Now, under new §524(m)(1), courts must review and decide whether to disapprove an agreement in which a presumption of undue hardship arises, regardless whether the debtor's counsel participated in the formation of the reaffirmation agreement or properly counseled the debtor about the potential benefits and pitfalls of reaffirmation.[8]

There is one final aspect of the reaffirmation process that merits attention. As mentioned above, Interim Fed. R. Bankr. P. 4008 requires that a filed reaffirmation agreement be accompanied by:

> a statement of the total income and total expense amounts stated on schedules I and J. If there is a difference between the income and expense amounts stated on schedules I and J and the statement required under §524(k), the accompanying statement shall include an explanation of any difference.

Interim Fed. R. Bankr. P. 4008.

---

[8] In the required disclosures in the Part A disclosure statement is a reference to the effect of a presumption of undue hardship as follows:

> If you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship.

11 U.S.C. §524(k)(3)(J)(I). Given that the role of debtor's attorney in the reaffirmation is only one of a number of factors that determine the enforceability of a reaffirmation agreement, see 11 U.S.C. §524(c)(1)-(6), the accuracy of this disclosure, standing alone, is doubtful. However, it does illustrate that attorney involvement does not insulate the reaffirmation agreement from judicial scrutiny based on undue hardship.

The purpose of the rule is to facilitate the court's determination whether a presumption of undue hardship has arisen under §524(m)(1) by providing the court with all of the information necessary to make that determination. See Advisory Committee Note to Interim Fed. R. Bankr. P. 4008 (2005).

### B. The Presumption of Undue Hardship Arose in this Case

In this case, the Debtor's §524(k)(6)(A) Statement disclosed the Debtor's monthly income as $2,800 and her monthly expenses as $2,600. Thus, on its face, the statement showed an ability to pay the reaffirmed debt. But, sometimes looks deceive.

The Debtor did not comply with Interim Rule 4008. She did not provide the court with the Statement required by Interim Rule 4008 setting forth her income and expenses as disclosed in Schedules I and J at the outset of the bankruptcy case. Nor did she provide an explanation for any discrepancy between the Schedules and the §524(k)(6)(A) Statement, as required by the rule. In fact, the discrepancy between the Debtor's Schedules and her §524(k)(6)(A) Statement is quite pronounced.

In her Schedules, the Debtor disclosed monthly income of $2,324 and monthly expenses of $3,075 (without even including her car payment). Her §524(k)(6)(A) Statement discloses materially higher income and lower expenses. While the Debtor's financial circumstances may have changed between January 26, 2006 (when she filed her Schedules) and May 1, 2006 (when she filed the reaffirmation agreement), no explanation for the different disclosures was provided to the court.

In these circumstances, a presumption of undue hardship arose under §524(m)(1). Based

on the information filed with the court, there is a serious question whether the Debtor's income and expenses are adequate to make the monthly payment required by the reaffirmation agreement. In making this determination, I have relied on information available from two sources: (1) the §524(k)(6)(A) Statement and (2) the Debtor's schedules (required by court rule to be provided to the court as part of the reaffirmation process).

I acknowledge that §524(m)(1) might be read literally and woodenly to provide that no presumption arose in this case. On the face of the §524(k)(6)(A) Statement, the Debtor's income and expenses, "as shown," seem adequate to make the monthly payment required under the reaffirmation agreement. However, in order to effectuate Congress' intent, a broader scope of review of the §524(k)(6(A) Statement is necessary. The statute necessarily contemplates that the §524(k)(6)(A) Statement has been completed properly and is accurate. In this case, the Debtor failed to file a proper §524(k)(6)(A) Statement as required by the rules of court. Further, given the conflict with the prior disclosures in the Debtor's Schedules, I cannot find that the information in the §524(k)(6)(A) Statement is accurate.

The court's power to evaluate the accuracy of the financial disclosures made by a debtor as part of a reaffirmation package is also supported by the history and purpose of 11 U.S.C. §524. The provisions of §524(c) and (d) were enacted in 1978 to protect consumer debtors from the perceived problem of "coercive and deceptive actions by creditors to secure reaffirmation of discharged debts." 4 Collier on Bankruptcy ¶524.04, at 524-34 (15th rev. ed. 2005). See also In re Melendez, 224 B.R. 252, 254 (Bankr. D. Mass. 1998) (providing a comprehensive legislative history of § 524(c) and (d)). The requirements for a reaffirmation agreement to be enforceable prior to BAPCPA were "designed to protect the honest but unfortunate debtor's fresh start." In re

Vargas, 257 B.R. at 166 n.12.

The BAPCPA "overhaul of the law applicable to reaffirmation agreements," H.R. Rep. No. 109-31, 109th Cong., 1st Sess. at 57 (April 8, 2005), was set forth in section 203 of the 2005 reform act titled "Discouraging Abuse of Reaffirmation Agreement Practices." 119 Stat. at 43. The words of the title express Congress' obvious intent to provide an extra measure of consumer protection over and above existing law. See, e.g., United States v. Thayer, 201 F.3d 214 (3d Cir. 1999), cert. denied, 530 U.S. 1244, 120 S.Ct. 2691 (2000).

Congress' primary mechanism for providing that protection was "to mandate that certain specified disclosures be provided to a debtor at or before the time he or she signs a reaffirmation agreement." Id. But Congress also provided for an additional layer of debtor protection by mandating judicial review of the reaffirmation agreements "[w]here the amount of the scheduled payments due on the reaffirmed debt (as disclosed in the debtor's statement) exceeds the debtor's available income." Id. at 58.[9] It is not surprising that Congress would look to the courts to protect the debtor's rights in the reaffirmation process. Judicial review of reaffirmation agreements has been described as an "excellent preventive measure against unwise reaffirmation of debts that may impair debtors' fresh start." In re Vargas, 257 B.R. at 166.

In light of this background, it is inconceivable that Congress intended that courts be barred from evaluating the accuracy of the information in the §524(k)(6)(A) Statement, at least

---

[9] It may be significant that in the House Report's description of §524(m)(1), the words "as disclosed in the debtor's statement" refer to the amount of the monthly payment of the reaffirmed debt, not the disclosure of the debtor's monthly income available to pay the reaffirmed debt. Thus, nothing in the legislative history suggests that Congress expected courts to be bound by a debtor's characterization of his income and expenses as set forth in the §524(k)(6)(A) Statement.

when the information conflicts with the disclosures previously made by the debtor under oath in Schedules I and J. To read the statute to compel courts to accept blindly the information set forth on the §524(k)(6)(A) Statement – provided by debtors who may be uncounseled and unsophisticated – would undermine and eviscerate the very goal Congress was intending to achieve by enacting §524(m)(1): protecting debtors from entering into reaffirmation agreements that they cannot afford. Rather, Congress' intent was to require judicial review of a reaffirmation agreement whenever the debtor's financial condition raises a question whether reaffirmation is appropriate for the debtor.

For these reasons, I hold that §524(m)(1) authorizes the bankruptcy court to: (1) make a threshold evaluation of the accuracy of the financial information set forth on the §524(k)(6)(A) Statement and (2) find that a presumption of undue hardship has arisen if the debtor has not made any effort to harmonize discrepancies between the §524(k)(6)(A) Statement and other information in the record, as mandated by Interim Rule 4008. Accord, In re Payton, 338 B.R. 899, 903 (Bankr. D.N.M. 2006) (in case involving uncounseled debtor, court concludes that "despite the odd wording of the statute, § 524(m) does not require the Court to rely only on the income and expense figures set out in part D of a reaffirmation agreement"). See generally In re Kane, 336 B.R. 477, 487 (Bankr. D. Utah 2006) (court may revise plain text of statute if no purpose would be served by literal construction and Congress' intended meaning is obvious).

### C. The Reaffirmation Agreement Will Be Disapproved Pursuant to 11 U.S.C. §522(m)(1)

As amended by BAPCPA, §524 provides for mandatory judicial review of reaffirmation agreements in two separate subsections: §524(c)(6)(A) and §524(m)(1).

When judicial review is mandated under §524(c)(6)(A), two requirements for approval are set out in the statute: (1) the agreement must not impose an undue hardship and (2) it must be in the best interest of the debtor. By comparison, §522(m)(1) does not set forth any specific standards to be used by a court in deciding whether to approve or disapprove the reaffirmation agreement in which a presumption of undue hardship has arisen. The question arises, then, as to the scope of the court's review of a reaffirmation agreement under §524(m)(1).

Section 524(m) states: "**If the presumption is not rebutted to the satisfaction of the court**, the court may disapprove such agreement." 11 U.S.C. §524(m)(1) (emphasis added). Thus, judicial review under §524(m) is triggered when a presumption of undue hardship arises. The scope of the court's review is not obvious from the text of the statute. A possible, natural reading of the provision, which refers only to the non-rebuttal of the presumption as a ground for disapproval of a reaffirmation agreement, may be that the scope of judicial review is limited to the issue of ability to pay/undue hardship. If so, a court's review might be limited to the question whether the presumption has been rebutted. On the other hand, nothing in §524(m)(1) expressly prohibits the court from considering other factors (such as the debtor's best interest, as under §524(c)(6)(A)). Some textual support for a more expansive review might be found in the statute's use of the word "may." The statute does not state that the court "shall" disapprove the reaffirmation agreement if the presumption of undue hardship is not rebutted. 11 U.S.C. §524(m)(1). The use of the word "may" could connote the existence of a more generalized discretion to disapprove an agreement even if the presumption has been rebutted. Or, the use of the word "may" could mean only that the court retains discretion to approve an agreement even if the undue hardship presumption has not been rebutted.

Having identified this issue relating to the scope of review, as explained below, it is not necessary for me to resolve it. In this case, the reaffirmation agreement should be disapproved under any standard of review.[10]

In this case, I have already found that a presumption of undue hardship has arisen. Since no one appeared at the hearing, the presumption has not been rebutted. Obviously, the Debtor's failure to rebut the presumption is a powerful consideration militating in favor of disapproval of the reaffirmation agreement.

To the extent that I should consider factors other than the Debtor's ability to pay/undue hardship, I must take into account that this reaffirmation agreement involves an automobile loan. If the appropriate scope of review includes factors other than ability to pay, such as the debtor's "best interests," it may then be appropriate to consider two other subjects.

First, what adverse consequences may result if the Debtor cannot retain the automobile? I have no information on this subject. I do not know the extent to which the Debtor depends upon the use of an automobile, but certainly there are many households in which the availability of an automobile is a necessity. See generally In re McGrann, 6 B.R. 612 (Bankr. E.D. Pa. 1980) (reaffirmation in debtor's best interest due to compelling need for automobile despite debtor's apparent inability to afford payments). For purposes of this analysis, I will assume that the Debtor has a legitimate need to retain her automobile.

Second, would disapproval of the reaffirmation agreement necessarily result in the Debtor's loss of the automobile? Again, I lack critical information. I do not know if the Debtor

---

[10] Thus, I do not decide if I have the power to disapprove a reaffirmation agreement under §524(m)(1) if the presumption of undue hardship is rebutted but other considerations suggest that the reaffirmation agreement is not in the best interests of the debtor. See n.4, supra.

-15-

is continuing to make timely monthly payments on this debt (despite her apparent inability to do so according to the information in her bankruptcy Schedules). If the Debtor is current on the automobile loan payments, deciding whether the reaffirmation agreement is in the Debtor's best interests implicates difficult legal issues relating to the existence or non-existence of a debtor's right to have secured debt "ride through" in a chapter 7 case.

In the most blunt terms, a relevant consideration may be whether the Debtor can retain her automobile. Does she have a legal right to retain her automobile if she continues to pay the monthly instalments as they fall due, notwithstanding the absence of a reaffirmation of her personal liability on the debt? A related question is, regardless of the precise contours of the debtor's legal rights, will the lender acquiesce to the Debtor's retention of the vehicle if she continues to make timely instalment payments on the loan?

In this Circuit, the leading case on the legal issue, prior to the enactment of BAPCPA, was In re Price, 370 F.3d 362 (3d Cir. 2004) (section 521 held not to bar a debtor from retaining automobile without reaffirming debt or redeeming the vehicle if the debtor maintains current payments on the secured loan). Post-BAPCPA, the answer to the question would require consideration of the complex, and perhaps convoluted, interrelationship among §521(a)(2)(A), §521(a)(2)(B), §521(a)(2)(C), §521(a)(6), §521(d), §362(h)(1) and, most likely, applicable nonbankruptcy law.[11] For a discussion of the issue, see Jean Braucher, *Rash* and Ride-Through

---

[11] I also note that the BAPCPA reaffirmation amendments include an equivocal statement regarding the rights of a secured creditor if the underlying debt has not been reaffirmed by the debtor. Congress mandated that the disclosure statement which debtors must receive as part of the reaffirmation packet (i.e., Part A of the packet) state the following:

> What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A 'lien' is often referred to as a

<u>Redux: The Terms for Holding on to Cars, Homes and Other Collateral Under the 2005 Act</u>, 13 Am. Bankr. Inst. L. Rev. 457, 474-81 (2005) ("Braucher"). See also <u>In re Rowe</u>, 2006 WL 1446181 (Bankr. D. Kan. May 10, 2006) (holding that "ride through" has been eliminated by BAPCPA, thereby entitling the secured creditor to relief from the automatic stay if the debtor does nor reaffirm, redeem or surrender the property, but that all further relief available to the creditor, if any, must be provided by the state court; the Bankruptcy Code does not give the creditor a right to possession of the secured property, as a matter of federal bankruptcy law, if the debtor does not reaffirm, redeem or surrender the property ).

I find it unnecessary to decide the difficult issues relating to "ride through" under BAPCPA in order to determine that the reaffirmation agreement in this case should be disapproved. At a minimum, there may be some legal uncertainty whether, in the absence of a court approved reaffirmation agreement, a lender secured by an automobile is entitled to any remedy other than relief from the automatic stay or whether such a lender may repossess the automobile of a chapter 7 debtor who continues to make monthly payments which are accepted by the lender. See, e.g., <u>In re Quintero</u>, 2006 WL 1351623 (Bankr. N.D. Cal. May 17, 2006) (stating that creditor may not repossess vehicle if debtor enters into reaffirmation agreement which the court disapproves); <u>In re Rowe</u>, 2006 WL 1446181, at *7-8 (if debtor is current in

---

> security interest, deed of trust, mortgage or security deed. <u>Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor **may** still have the right to take the security [sic] property if you do not pay the debt or default on it.</u>

11 U.S.C. §524(k)(3) (emphasis added). The syntax of the sentence suggests that if a debtor continues to pay and does not default, the creditor may not have the right to take the "security [sic] property."

payments, applicable state law may prohibit creditor from repossessing automobile notwithstanding ipso facto bankruptcy default clause in the parties' contract). Further, regardless of the outcome of the legal issue, it is not obvious that court disapproval of the reaffirmation agreement would necessarily result in creditor efforts to take possession of the vehicle if the Debtor continues to make her monthly payments. See Braucher, 13 Am. Bankr. Inst. L. Rev. at 476 (suggesting that empirical evidence suggests that there has been considerable voluntary, creditor acquiescence to "ride through").

The realistic possibility that the Debtor may be able to retain the vehicle without reaffirmation, along with the Debtor's failure to rebut the undue hardship presumption and the Debtor's failure to make any showing that there is a compelling necessity for her to retain her vehicle, taken together, cause me to exercise the discretion afforded under §522(m)(1) to disapprove the reaffirmation agreement.

### III. CONCLUSION

For the reasons set forth above, an order will be entered disapproving the reaffirmation agreement between the Debtor and DaimlerChrysler.

Date: 6/16/06

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE

**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE:    SUZANNE LAYNAS | : | Chapter 7 |
| | : | |
| Debtor(s) | : | Bky. No. 06-10297ELF |
| | : | |

## ORDER

**AND NOW,** for the reasons set forth in the accompanying Memorandum Opinion, it is hereby **ORDERED** that the reaffirmation agreement between the Debtor and DaimlerChrysler Financial Services Americas LLC is disapproved pursuant to 11 U.S.C. §524(m)(1).

Date: 6/16/06

ERIC L. FRANK
U.S. BANKRUPTCY JUDGE